IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**BRANDON PUGH (# 165014)**     **PLAINTIFF**

v.     **No. 4:19CV13-GHD-RP**

**LT. EDWARD THIGPEN**
**LT. TONY FOSTER**
**DEPUTY WARDEN LEE SIMON**
**ASSOCIATE WARDEN MRS. STURDEVANT**     **DEFENDANTS**

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Brandon Pugh, who challenges the conditions of his confinement under 42 U.S.C. § 1983. For the purposes of the Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit. The plaintiff has brought the instant case under 42 U.S.C. § 1983, which provides a federal cause of action against "[e]very person" who under color of state authority causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The plaintiff alleges that the defendants denied him adequate medical care for a leg injury and placed him in a cell with unsanitary conditions. The defendants have moved for summary judgment; the plaintiff has not responded, and the deadline to do so has expired. The matter is ripe for resolution. For the reasons set forth below, the defendants' motion for summary judgment will be granted, and judgment will be entered for the defendants.

### Summary Judgment Standard

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show

that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) and (c)(1). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992).

The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both

parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

The very purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine issue for trial." Advisory Committee Note to the 1963 Amendments to Rule 56. Indeed, "[t]he amendment is not intended to derogate from the solemnity of the pleadings[;] [r]ather, it recognizes that despite the best efforts of counsel to make his pleadings accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The non-moving party (the plaintiff in this case), must come forward with proof to support each element of his claim. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73, 110 S.Ct. 3177, 3180 (1990), "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994).

It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990). In considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible. Matsushita, supra.* (emphasis added). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009)

(discussing plausibility of claim as a requirement to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6)).

In considering a motion for summary judgment, once the court "has determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, [the ultimate decision becomes] purely a question of law." *Scott v. Harris*, 550 U.S. 372, 381 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

**Undisputed Material Facts**

Brandon Pugh, an inmate with the Mississippi Department of Corrections ("MDOC"), filed suit regarding alleged constitutionally inadequate medical care and conditions he has experienced while incarcerated at the Mississippi State Penitentiary at Parchman, Mississippi ("MSP"). [1] *Compl.* Mr. Pugh seeks injunctive relief as well as compensatory and punitive damages. [1] at 10 (CM/ECF Pagination). On July 16, 2019, he gave sworn testimony clarifying his claims against the defendants at a *Spears*[1] hearing. On December 12, 2019, he filed a [23] Notice of Change of Address indicating that he was transferred to the Wilkinson County Correctional Facility ("WCCF").

The factual basis for Mr. Pugh's claims is set forth in the Magistrate Judge's Report and Recommendation:

> On Friday July 27, 2018, in Unit 29-H, Brandon Pugh got down from the top bunk, lost his balance, fell on his locker box, and cut his leg. He showed his leg to the security staff, who notified a guard named "Honorable" and Lt. Thigpen. Pugh yelled for Lt. Thigpen, who came to see and said, "Medical will come get you after shift

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

- 4 -

> change." He waited from 4:58 p.m. until shift change, but medical did not come see him. At 6:20 a.m. on Saturday, Pugh was still waiting, and his leg had begun to swell. Lt. Foster came to Unit 29-L that day, saw the plaintiff's leg, and said he would report the injury to medical, but he did not do so. Mr. Pugh repeatedly informed medical staff that he needed medical attention. He filed numerous sick call request forms, but he was not taken to medical for treatment. He saw Nurse Thompson on August 29, 2018 (about a month after he cut his leg, which had begun to turn black). A response to one of his sick call requests was that he was "placed on the Sick Call list for pick up on November 2, 2018." He did not go to medical until February 2019 (about seven months after his injury occurred), when he saw a doctor and received pain medication. He never received a tetanus shot. His wound healed, but left a sunken scar on his leg.
>
> Mr. Pugh also alleges that his unit is filthy and infested with rats. No one cleans the toilet, and prison officials have provided chemicals for cleaning only three times in the last year.

[40] *Report and Recommendation* at 1-2.

A review of Mr. Pugh's medical records in this matter, however, reveals a very different chronology of his treatment after falling from his bunk. On August 8, 2018, Mr. Pugh saw Nurse Juanita Thomas for a complaint of headaches and a cut to his left leg. (MDOC-PUGH-000280 through MDOC-PUGH-000281). The examination revealed a healing laceration to the lower left leg with no evidence of infection. (MDOC-PUGH-000281).

Mr. Pugh submitted a Medical Service Request ("MSR") form on November 5, 2018, regarding a rash on his right leg and head. (MDOC-PUGH-000535). He also submitted an MSR regarding his left leg on November 9, 2018, and was seen by Nurse Calvin Stewart for both requests on November 25, 2018. (MDOC-PUGH-000543; -000536). When Nurse Stewart examined Mr. Pugh, she noted that there was a flat, dry rash on his left leg, and there was no drainage or infection noted. (MDOC-PUGH-000329-330). He was given hydrocortisone cream for the rash. (MDOC-PUGH-000330).

The court notes that Mr. Pugh continued to see medical providers between the August 8 and November 9 appointments: August 14, 2018, MSR regarding his right leg, seen on August 29, 2018

-5-

(MDOC-PUGH-000517); August 24, 2018, MSR regarding dental care, seen on August 29, 2018 (MDOC-PUGH-000518); August 24, 2018, MSR regarding his head, seen on August 29, 2018 (MDOC-PUGH-000519); August 30, 2018, MSR regarding his headaches, seen on October 11, 2018 (MDOC-PUGH-000528); September 22, 2018, MSR regarding his crawling sensations and sleep disturbances, seen on September 25, 2018 (MDOC-PUGH-000523). He did not mention the injury to his left leg during these visits.

He submitted another Medical Service Request Form on December 21, 2018, requesting to see a doctor about his head and his leg. (MDOC-PUGH-000543). He stated that he wanted a tetanus shot and that his scalp had been draining. (MDOC-PUGH-000335). On December 26, 2018, Mr. Pugh saw Angela Brown, APN-BC, regarding these complaints. *Id.* Nurse Brown noted that his scalp had folds, but was negative for scabs or drainage. *Id.* She also noted that his left leg had two abrasions with hyperpigmentation but there was no infection or edema in the legs. *Id.* Nurse Brown ordered a tetanus shot for Mr. Pugh, along with lab tests and an X-ray for his tibia and fibula. (MDOC-PUGH-000336). On December 29, 2018, Pugh saw Nurse Thomas as a follow-up. (MDOC-PUGH-000340). On that visit, Mr. Pugh stated that he had also received antibiotics. *Id.* Lab tests results were completed on January 4, 2019, and his leg was x-rayed on February 15, 2019. (MDOC-PUGH-000343-344; -000364).

### Plaintiff is Not Entitled to Injunctive Relief

Mr. Pugh has requested that he be moved away from Unit 29 because he fears reprisals from Lt. Thigpen; he also requests a court order for MDOC to improve the conditions in Unit 29. His transfer to the Wilkinson County Correctional Facility, however, has rendered his requests moot:

> The transfer of a prisoner out of an institution often will render his claims for injunctive relief moot. [The plaintiff], however, argues that his alleged constitutional violations are capable of repetition yet evading review.

> [A plaintiff] must show either a demonstrated probability or a reasonable expectation that he would be transferred back to [the prison where the incidents occurred] or released and reincarcerated there.

*Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (internal citations, quotations, and footnotes omitted). In this case the plaintiff has not made such an argument, and the court finds his requests for injunctive relief to be moot.

### Qualified Immunity

In addition, the defendants are entitled to qualified immunity regarding the allegations in the present suit. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To overcome the qualified immunity defense, a plaintiff must meet a two-pronged test. He must first allege a violation of a clearly established constitutional right. *Wilkerson v. Stalder*, 329 F.3d 431, 434 (5th Cir. 2003); *Heitschmidt v. City of Houston*, 161 F.3d 834, 836–37 (5th Cir.1998). "To be 'clearly established' for purposes of qualified immunity, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Johnson v. Johnson*, 385 F.3d 503, 524 (5th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). In addition to alleging the violation of a clearly established constitutional right, a plaintiff must also allege facts showing that the defendant's conduct was objectively unreasonable in the light of the law established at the time of the incident. *Heitschmidt*, 161 F.3d at 836–37. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In this case, Mr. Pugh has not shown that the defendants were plainly incompetent or that they

knowingly violated the law. The court will discuss how qualified immunity applies to each of Mr. Pugh's allegations below.

### Denial of Adequate Medical Care

In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986).

In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a claim against the

- 8 -

prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

"Deliberate indifference is not established when medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015). Nor is it established by a physician not accommodating a prisoner's requests in a manner he desired or the prisoner's disagreement with the treatment. *Id.*; *Miller v. Wayback House*, 253 F. App'x 399, 401 (5th Cir. 2007). To meet his burden in establishing deliberate indifference on the part of medical staff, the plaintiff "must show that [medical staff] refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brauner*, 793 F.3d at 498.

In this case, Mr. Pugh's medical records reveal that he received medical treatment on an ongoing basis. The evidence shows that he saw a nurse on August 8, 2018, twelve days after sustaining his injuries, for a complaint regarding the cut to his left leg, and the examination revealed a healing laceration to the lower left leg with no evidence of infection. He later saw a nurse about a rash on his leg and was given medication. He also received a tetanus shot, antibiotics, lab tests, and an X-ray for his tibia and fibula resulting from left leg complaints. Indeed, it appears that he was examined and treated each time he filed a medical request form. Thus, his various examinations, medications, lab tests, and x-rays undermine his claim of deliberate indifference.

Mr. Pugh also appears to claim that someone should have taken him to medical in the absence of his filing a medical request form. However, requiring a prisoner to submit his non-emergency complaints to the correct department (in this case, the medical department) in accordance with the

applicable jail procedures does not rise to the level of a constitutional violation. *See Haddix v. Burris*, No. C-12-1674, 2013 WL 2950655, at *2 (N.D. Cal. June 14, 2013) ("[P]rison officials may require inmates to comply with regulations that have established procedures for recurring issues without violating an inmate's constitutional rights."); *see also Green v. Guidry*, Civ. Action No. 19-12052, 2019 WL 5540959, at *9 (E.D. La. Oct. 4, 2019) ("Here, jail officials did not ignore plaintiff's need for medical care; rather, they simply instructed him that he must submit a formal request for medical care in accordance with the jail's procedures. Requiring such a request does not violate an inmate's right to medical care."), *adopted*, 2019 WL 5538065 (E.D. La. Oct. 25, 2019); *Alexander v. Texas Department of Criminal Justice*, Civ. Action No. H-16-3520, 2017 WL 5749548, at *3 (S.D. Tex. Nov. 28, 2017) ("[Prisoner]'s allegation that a nurse practitioner told him to submit a sick call request to see a physician about his need for pain medication does not establish that he was denied care with the requisite deliberate indifference for purposes of stating a claim under the Eighth Amendment."); *Curtis v. Gonzales*, Civ. Action No. SA-09-CV-0911, 2010 WL 3928521, at *3 (W.D. Tex. Oct. 5, 2010) (Nowak, M.J.) ("Rather than ignore [the prisoner]'s complaints, [prison] employees instructed [the prisoner] to comply with prison procedures for seeking medical treatment. Such conduct does not evince a wanton disregard for a serious medical need.") (adopted by Garcia, J., on December 10, 2010); *Maxwell v. Epps*, No. 4:04CV168, 2007 WL 4287712, at *2 (N.D. Miss. Dec. 4, 2007).

    Mr. Pugh's leg injury does not rise to the level of a serious medical condition. It healed on its own without infection, and he visited medical five times between August 8, 2018, and November 9, 2018, but never complained about his leg injury during any of those visits. The Constitution guarantees prisoners "only adequate, not optimal medical care." *Spriggins v. LaRavia*, 2012 WL 1135845, at *4 (E.D. La. Apr. 4, 2012), citing *Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006). Medical records showing sick calls, examinations, diagnoses, and medications may rebut an inmate's

allegations of deliberate indifference. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). A delay which does not aggravate or exacerbate the medical condition does not constitute a constitutional violation. *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). A "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Id.* at 195. However, "the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

None of Mr. Pugh's claims rises to the level of deliberate indifference, as he has not shown that the defendants caused "unnecessary and wanton infliction of pain," *Estelle, supra,* or that they "[knew]of and disregard[ed] an excessive risk to inmate health or safety," *Farmer, supra*. He requested medical care, was examined and treated, and his injuries healed. The defendants were not "plainly incompetent" and did not "knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As such, the defendants are entitled to qualified immunity as to the plaintiff's claims of denial of medical care.

### Conditions in Mr. Pugh's Cell

The defendants are likewise entitled to qualified immunity as to the plaintiff's claims regarding the conditions in his cell. "[T]he Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience." *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir.1989), *cert. denied*, 493 U.S. 969 (1989)(citation omitted). "Inmates cannot expect the amenities, conveniences, and services of a good hotel." *Id.* at 849 n.5 (citation omitted). Prison officials have certain duties under the Eighth Amendment, but these duties are only to provide prisoners with "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care . . . ." *Woods v. Edwards*, 51 F.3d 577,

581 n.10 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). Considering the "totality of the circumstances," *McCord v. Maggio*, 910 F.2d 1248 (5th Cir. 1990), the instant claims do not rise to the level of a constitutional violation. The plaintiff has not identified any "basic human need" which he was denied for an unreasonable period of time. *See Woods*, 51 F.3d at 581.

Though Mr. Pugh did not mention prison conditions within Unit 29 in his complaint, he briefly alleged at his *Spears* hearing that his toilet was seldom cleaned, cleanings with chemicals occurred only three times per year, and there were rats in the unit. He argued that such conditions put him at elevated risk of infection of his leg. He has not, however, alleged any physical injury from the alleged conditions; nor has he shown that they rose to the level of a substantial risk of serious harm to his health or safety. He thus has not shown that the defendants were "plainly incompetent" or "knowingly violate[d] the law." *Malley, supra*. As such, the defendants are entitled to qualified immunity as to the plaintiff's regarding the conditions in his cell.

## Conclusion

For the reasons set forth above, the plaintiff's request for injunctive relief must be dismissed as moot because he has been transferred to another facility. In addition, the defendants are entitled to qualified immunity as to the plaintiff's allegations regarding denial of adequate medical care and unconstitutionally poor conditions in his cell. As such, the defendants' motion for summary judgment will be granted, and judgment will be entered for the defendants. A final judgment consistent with this memorandum opinion will issue today.

SO ORDERED, this, the 29th day of September, 2020.

/s/ Sha H. Davidson
SENIOR U.S. DISTRICT JUDGE